**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| RAMON RODRIGUEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-10843-NMG |
| ) | |
| MICHAEL CORSINI, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**RESPONDENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PETITIONER'S PETITION FOR**
**WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The respondent, Michael Corsini, hereby submits the following memorandum of law in

opposition to the petition for a writ of habeas corpus filed by the petitioner, Ramon Rodriguez

(hereinafter, "the petitioner"). As is set forth in greater detail below, the petition should be

denied because the petitioner's claim is procedurally defaulted, and the petitioner cannot show

cause and prejudice which would excuse his default, nor can he demonstrate that he is actually

innocent. Furthermore, even if this Court were to review the merits of his claim, he cannot show

that the state courts' decision violated any federal constitutional right.

**PRIOR PROCEEDINGS**

On September 17, 2001, a Plymouth County grand jury returned three two-count

indictments against the petitioner. Two indictments each alleged one count of unlawful

distribution of a class B controlled substance, in violation of G.L. ch. 94C, § 32A(c), and one

count of unlawful distribution of a class B controlled substance, subsequent offense, in violation

of G.L. ch. 94C, § 32A(d). *See* Docket Sheet, *Commonwealth v. Ramon T. Rodriquez*, Plymouth

County Superior Court Criminal Action No. 2001-00386, attached to the Supplemental Answer, filed previously (hereinafter, "Supp. Ans.") as Exhibit 1.  *See also* Brief for the Commonwealth, *Commonwealth v. Ramon T. Rodriquez*, Massachusetts Appeals Court No. 2003-P-820.  The third indictment alleged one count of unlawful possession of a class B controlled substance with the intent to distribute, in violation of G.L. ch. 94C, § 32A; and one count of unlawful possession with intent to distribute a class B controlled substance, subsequent offense, in violation of G.L. ch. 94C, § 32A(d).

The petitioner was tried before a jury and Judge Patrick Brady in the Massachusetts Superior Court on December 17 and 18, 2002, on the two distribution indictments and the one possession with intent to distribute indictment. *See* Docket Sheet, Supp. Ans., Exhibit 1.  The jury convicted the petitioner on all three indictments. *See id.*  The court rejected the petitioner's attempted jury waiver after a colloquy and the petitioner was then tried and convicted before the same jury on the three "subsequent offense" indictments.  *Id.*

The petitioner was sentenced to five to seven years at the Massachusetts Correctional Institute at Cedar Junction on each of the indictments, with each sentence to be served concurrently with the others.  *See* Docket Sheet, Supp. Ans., Exhibit 1.

The petitioner filed a timely notice of appeal. *See* Docket Sheet, Supp. Ans., Exhibit 1. The Massachusetts Appeals Court affirmed the petitioner's convictions on October 21, 2004. *See Commonwealth v. Rodriquez*, 62 Mass. App. Ct. 1107(2004)(table).   The petitioner sought leave to obtain further appellate review from the Massachusetts Supreme Judicial Court ("the SJC"); however, the SJC denied the petitioner's application on March 30, 2005.  *See Commonwealth v. Rodriquez*, 443 Mass. 1107 (2005)(table).

## STATEMENT OF FACTS

The state court's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court").   This deference extends to inferences drawn by the state court from those factual determinations as well.  *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

Facts Pertaining to the Substantive Offenses[1]

On May 20, 2001, Brockton Police Officer Gary Mercurio was working the 4 p.m. to midnight shift as a bicycle patrol officer. (Tr. I:77-78).  He was working the community police beat, which involved patrolling high crime areas.  (Tr. I:78).  At about 9:40 p.m., Officer Mercurio was in the 200 block of Main Street, which included the Eastern Jade Restaurant and Sweeney's Bar.  This was a high crime area known for narcotics violations, prostitution and other street crimes. (Tr. I:78).  The owner of the Eastern Jade had posted "No Loitering" signs in front of the restaurant and had asked the police to come by from time to time to check the area. (Tr. I:79).

Officer Mercurio went by the Eastern Jade Restaurant to see if there were any crowds there. (Tr. I:79).  He first rode to the back of the restaurant, then down an alley to the front, where he saw the petitioner talking to a white female and a Hispanic female.  (Tr. I:79-80).  Both females were known to Officer Mercurio. (Tr. I:80).  The three people were about two feet from the restaurant in a well-lit area.  (Tr. I:81-82).  Officer Mercurio saw the petitioner, hunched over, appearing to show the two females something with his left hand.  (Tr. I:82).  Officer Mercurio, who was about five feet away, got off his bike and walked directly

_____

[1]  The fact that the jury handed down a guilty verdict necessarily means that jury accepted the testimony inculpating the defendant and "necessarily rejected" the defendant's contrary testimony. *See McCambridge v. Hall*, 303 F.3d 24, 40 (1st Cir. 2002).  *See also Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983)

behind the petitioner. (Tr. I:82-83).

The petitioner and the two females did not appear to notice him at first. (Tr. I:83). Both women were looking down into the petitioner's hand, which was out in front of him. (Tr. I:83). Officer Mercurio saw the white female hand the petitioner folded-up money as she reached into his hand and pick up one piece of crack cocaine. (Tr. I:84-85). Officer Mercurio then saw the white female throw the piece of crack back into the petitioner's hand. (Tr. I:84). The petitioner then turned around, looked at the police officer and dropped what he had in his hand onto the ground. (Tr. I:84-86). The items that were thrown to the ground were three pieces of crack cocaine tied in plastic bags with a knot. (Tr. I:86; 96).

The petitioner was handcuffed and arrested. When the petitioner was searched at the police station, he was found to possess another similarly packaged rock of crack cocaine. (Tr. I:90-91). The police also found $393 in cash on the petitioner. (Tr. I:91). The police did not find any paraphernalia used to ingest crack cocaine. (Tr. I:99).

According to the petitioner's trial testimony, he ate dinner at the Eastern Jade Restaurant with Ana Boria, whom he identified as his common-law wife. (Tr. I:115; 127). He then claimed he ran into the other female, Laurie Bell, whom he stated owed him twenty dollars. (Tr. I:116). He spoke with her outside the restaurant and she returned the twenty dollars. (Tr. I:117). The petitioner testified that he was receiving Social Security Insurance benefits at that time and he would get the check for $450 around the 28th or 29th of the month. (Tr. I:117). He claimed that the $393 he had in his pocket was left over from the check. (Tr. I:131). He also claimed that he did not have anything in his hand and that the police took the $20 he had received from Laurie Bell and threw it on the ground. (Tr. I:118). He denied selling drugs to anyone and stated that the crack cocaine that was found in his pocket was for his own personal use, and that the drugs found on the ground were not his. (Tr. I:122-23; 134).

Subsequent Offense Trial

The Commonwealth presented evidence of two prior offenses for which the petitioner was convicted before the May 20, 2001 offenses.[2] Police Officer Roderick Ambrose testified that in 1993, while working undercover, he purchased cocaine from the petitioner on two separate occasions, specifically November 5, 1993, and November 19, 1993. (Tr. 2:73-77). Specifically, Officer Ambrose

---

[2] In count B of each of the three indictments, the Commonwealth alleged seven alternative prior offenses. At trial, the Commonwealth introduced evidence of only two of these. (Tr. 2:84-86).

4

testified that he was working undercover in November of 1993, and on both November 5th and November 19th, he made phone calls to arrange to purchase cocaine. (Tr. 2:74; 76). On November 5th, after making the call, Officer Ambrose met with the petitioner on Route 123, where Officer Ambrose gave the petitioner $40 in exchange for a bag of cocaine. (Tr. 2:75). On November 19th, after making two calls, Officer Ambrose met with the petitioner and another individual, exchanging $120 for three bags of cocaine. (Tr. 2:75-77). Officer Ambrose further testified that the petitioner pled guilty to both offenses in Brockton Superior Court in 1995. (Tr. 2:80). Certified copies of the petitioner's convictions for the November 5, 1993, and November 19, 2003, offenses were introduced into evidence. (Tr. 2:80).

The Judge's Charge

During his preliminary charge to the jury on the subsequent offense trial, the judge mistakenly referred to July 24, 2001, rather than May 20, 2001, as the date of the underlying offense. Specifically, in the preliminary charge, the judge stated:

> Now, Count B to each of these three indictments charges that the [petitioner] does have prior convictions of unlawful distribution of controlled substances. Now, you're going to hear evidence on Count B of each of these indictments. The Commonwealth must show beyond a reasonable doubt that this [petitioner], Mr. Rodriquez, was previously convicted, that is before the date of the underlying offenses concerning which you've previously heard evidence, namely July 24, 2001. The Commonwealth must prove that the [petitioner] was previously convicted of manufacturing, distributing, or dispensing a controlled substance or possessing with the intent to manufacture, distribute or dispense a controlled substance. (Tr. 2:63-64).

During his final instructions to the jury, the judge again misstated the date of the underlying offense. This time, he said July 20, 2001, rather than the correct date of May 20, 2001.[3] The judge stated:

> Jurors, I'm not going to speak at length. I would remind you, of course, that the burden of proof on this count or these three Count Bs is the same as the burden of proof on the other underlying offenses which you heard yesterday and on which I've charged

---

[3] In his preliminary charge, the judge had given the incorrect date of July 24, 2001. (Tr. 2:63-64).

you this morning.

What the Commonwealth has to prove is that this individual, this Ramon Rodriquez before us, the gentleman who you found guilty on July 20, 2001, was previously convicted, that is, prior to July 20, 2001, with the offense of, with at least one offense of distribution of a controlled substance, namely cocaine.

The statute -- I'll read it to you again -- it provides as follows: Any person convicted of violating the provisions of subsection C after one or more prior convictions of manufacturing, distributing, dispensing or possessing with intent to manufacture, distribute, or dispense a controlled substance shall be punished.

So that is for you to decide. Has this Commonwealth proved beyond a reasonable doubt that this individual, Ramon Rodriquez, was previously convicted, that is prior to the underlying offense of which you have found him guilty on July 20, 2001, was previously convicted of at least one offense of distribution of a controlled substance, namely cocaine.

Now, when [the clerk] read to you the details of the Count Bs, he read to you the first two, that is that two that the Commonwealth presented evidence. He also read to you five others. Ignore them. Although they were pled, the Commonwealth presented no evidence whatsoever that this gentleman was convicted on any other dates, so your only focus will be whether this gentleman here, Ramon Rodriquez, was convicted of the alleged events arising on November 5, 1993, and November 15, 1993.

Now, I want to make it clear that the Commonwealth does not have to re-prove the underlying offense of November 5 and 19, 1993. What they have to prove, however, is that this gentleman was convicted, that is, found guilty. It doesn't matter whether it was after a plea of guilty or a jury trial. The Commonwealth has to prove that this gentleman, Ramon Rodriquez, was convicted of distribution of an unlawful substance, namely cocaine, on one or more of these prior occasions. (Tr. 2:83-86).

The petitioner did not object to the judge's misstatement of the date at trial.


**<u>ARGUMENT</u>**

I.     **The Petitioner May Not Be Granted Habeas Review Because His Claim is Procedurally Defaulted**

In his petition for habeas relief, the petitioner asserts that he was denied a fair trial because the judge misstated the date of the underlying offense during the jury trial on the "subsequent offense" charge. *See* Petition, ¶ 12(A-B).  However, as the Massachusetts Appeals Court noted in its review of the petitioner's state court appeal, the petitioner "did not object to the judge's misstatement of the date at trial." *See Commonwealth v. Rodriquez,* 62 Mass. App. Ct. 1107 (2004)(table), Supp. Ans.,  Ex. 4.  *See also* Petition, ¶ 12(A)(petitioner acknowledges that when the judge misstated the date defense counsel did not correct the court). This claim was therefore waived in the state court, and federal habeas review is precluded by the procedural default rule.  *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial.  Rather, the remedy is limited to the consideration of federal constitutional claims." *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1995); *see also Herrera v. Collins,*  506 U.S. 390, 400 (1993)(affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution); *Barefoot v. Estelle,* 463 U.S. 880, 887 (1983)("Federal courts are not forums in which to relitigate state trials").  Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state law ground.  *See Coleman v. Thompson*, 501 U.S. 722 (1991).   A petitioner's procedural default constitutes an adequate and independent state ground so long as the state consistently applies the

7

rule and has not waived it. *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Burks v. DuBois*, 55 F.3d at 716; *Puleio v. Vose*, 830 F.3d 1197, 1199 (1st Cir. 1987), *cert. denied,* 485 U.S. 990 (1988).

In order to preserve a claim for full review in Massachusetts, a petitioner is obligated to bring the alleged error to the attention of the judge. *See Brewer*, 119 F.3d at 1001; Mass. R. Crim. P. 22 (the contemporaneous objection rule); Mass. R. Crim. P. 24(b)("no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict"). Here, the petitioner did not object at trial to the judge's misstatement in the jury charge. *See* Supp. Ans., Ex. 4; Petition, ¶ 12(A-B). The Appeals Court therefore reviewed the unpreserved claim of error only to determine whether the error created a substantial risk of a miscarriage of justice. *Commonwealth v. Rodriquez,* 62 Mass. App. Ct. 1107 (2004)(table), Supp. Ans., Ex. 4. The Appeals Court concluded that the judge's "minor misstatement" did not create such a likelihood of a miscarriage of justice. *See id.* This determination constitutes an "adequate and independent state law ground" within the meaning of the procedural default rule, thereby precluding habeas review." *See Brewer*, 119 F.3d at 999.

To overcome this procedural default to permit federal habeas review, the petitioner must demonstrate either (1) cause and prejudice for the default, or (2) that a failure to review the claim will result in a "fundamental miscarriage of justice," *i.e.,* the conviction of an innocent person. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, the petitioner cannot demonstrate either. Petitioner's counsel's failure to object to the misstatement in the jury instructions does not establish cause to excuse this procedural default. *See Murray v. Carrier,* 477 U.S. 478, 486 (1986)(counsel's failure to recognize a claim or failure to raise a recognized claim does not

8

constitute "cause"); *Engle v. Isaac,* 456 U.S. 107, 134 (1982)(counsel's alleged unawareness of objection not sufficient to constitute "cause").

Furthermore, even if the petitioner could demonstrate "cause" for his default, he cannot demonstrate that he would suffer the genre of prejudice required to excuse those defaults, namely, that the alleged error "infect[ed] his entire trial with error of constitutional dimensions." *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994), *cert. denied*, 513 U.S. 1085 (1995), quoting *United States v. Frady*, 456 U.S. 152, 170 (1982).  The Appeals Court reviewed the claim of error with respect to the misstatement in the jury instructions, and determined that "the judge's misstatement of the date could not reasonably have confused the jury."  *Commonwealth v. Rodriquez,* 62 Mass. App. Ct. 1107 (2004)(table), Supp. Ans.,  Ex. 4.  Under these circumstances, the petitioner can demonstrate no prejudice rising to the level of error "infecting his entire trial with error of constitutional dimensions."  *Ortiz v. DuBois*, 19 F.3d at 714.

Finally, the petitioner could make no determination to this habeas court that he actually is innocent.  "To establish actual innocence, 'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir. 1999), quoting *Schlup v. Delo*, 514 U.S. 298, 327 (1995)(citations omitted).   The Commonwealth produced ample evidence of the petitioner's guilt.  As such, this "quite narrow and seldom used" exception to the procedural default doctrine simply does not apply and habeas review is barred. *Simpson v. Matesanz*, 175 F.3d at 210.

**II.      The Petitioner May Not Be Granted Habeas Review Because The Judge's Misstatement During the Jury Charge Did Not Violate the Petitioner's**

## **Constitutional Rights**

In his petition, the petitioner asserts that he did not receive a fair trial because the trial judge referred several times to July 2001 (rather than to the proper date of May 2001) as the date of the underlying offense during the petitioner's "subsequent offense" trial. *See* Petition, ¶12(A-B). The petitioner argues that the judge's misstatement rendered his trial "fundamentally unfair." *See id.* The Appeals Court considered and rejected this argument, holding that:

> The trial judge's minor misstatement of the date of the underlying offense during the instructions on the subsequent offense trial was immaterial. The [petitioner] did not object to the judge's misstatement of the date at trial. There was no substantial risk of a miscarriage of justice.

> It has long been held that the date of offense is not an essential element of a crime. *Commonwealth v. Day*, 387 Mass. 915, 921-922 (1983). Thus, in the circumstances where the prior offense occurred more than six years earlier, whether the date of the underlying offense was May or July was immaterial. "A reasonable juror would have understood that the judge's misstatement was a slip of the tongue, because the instruction otherwise makes no sense in the context of the entire set of instructions." *Commonwealth v. Lucien*, 440 Mass. 658, 668-669 (2004). *See Commonwealth v. Grant,* 418 Mass. 76, 85 (1994).

> In light of the fact that the prior offenses were more than six years earlier and the jury had just heard the trial on the underlying offense, the judge's misstatement of the date could not reasonably have confused the jury.

*Commonwealth v. Rodriquez*, 62 Mass. App. Ct. 1107 (2004)(table), Supp. Ans., Exhibit 4.

The petitioner has not submitted a memorandum of law in this case. A review of the memorandum in support of his application for leave to obtain further appellate review does not reveal a citation to any Supreme Court case which holds that it is a violation of a petitioner's constitutional right to a fair trial for a judge to make minor misstatements regarding a date in the

course of a jury charge,[4] and the respondent is aware of no case which stands for such a

proposition.  Accordingly, since the petitioner cannot show that his conviction was obtained in

violation of any federal constitutional right, his habeas claim must be denied.

## CONCLUSION

For the foregoing reasons, the respondent requests that this Court deny the petition for a

writ of habeas and dismiss the petitioner's complaint in its entirety.


Respectfully submitted,

MICHAEL CORSINI,

By his attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/  Maura D. McLaughlin
Maura D. McLaughlin (BBO # 634923)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ex. 2857


Dated: August 3, 2006

---

[4] In the petitioner's memorandum to the SJC, he asserts that the constitutional right violated arises under the Sixth Amendment; in his petition in this case, he claims a violation of the Fourteenth Amendment.  *See* Petition, ¶12(A); Supp. Ans., Exhibit 5.

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and accurate copy of the foregoing document to be served upon the petitioner this 3rd day of August, 2006, by depositing a copy in the office depository for collection and delivery of first-class mail, addressed as follows:  Ramon T. Rodriguez, Bay State Correctional Center, P.O. Box 73, Norfolk, Massachusetts 02056.


/s/ Maura D. McLaughlin
Maura D. McLaughlin